[Civ. No. 14625. First Dist., Div. One. June 1, 1951.]

GEORGE W. FULLER et al., Respondents, v. I. MAGNIN AND COMPANY (a Corporation), Appellant.

Samuel L. Stevens, Edward S. Rosston and Heller, Ehrman, White & McAuliffe for Appellant.

George F. Jansen and Thornton & Taylor for Respondents.

WOOD (Fred B.), J.—Defendant I. Magnin and Company appeals from a judgment rendered against it and in favor of plaintiffs in the sum of $4,612.50, the value of a diamond and platinum brooch, which belonged to plaintiffs George W. and Jane H. Fuller and was in the lawful possession of plaintiff Mrs. John Elstun at the time of its loss in defendant's store.

Appellant claims (1) that the evidence is insufficient to support certain of the court's findings of fact and (2) that the conclusion that appellant became and is indebted to respondents in the sum of $4,612.50 (the value of the brooch) is contrary to law.

Appellant has for many years operated a women's retail specialty store in San Francisco. Appellant handles merchandise of the best quality and highest style, characteristics that are reflected in the prices of the merchandise, and appellant counts among its steady and good customers many of the families best financially situated in the bay area. The families of the respondents have been good customers of appellant for many years; respondent Mrs. Elstun and her daughter, Mrs. Hihn, for over 30 years.

On April 30, 1948, Mrs. Elstun visited the store to select some dresses. She went to the third floor and was waited upon by a Miss Peterson, a saleslady who had been in the employ of appellant for about 30 years and had known Mrs. Elstun for about 25 years. Miss Peterson showed Mrs. Elstun several dresses in the public showroom while waiting for the arrival of Mrs. Hihn.

When Mrs. Hihn arrived, Miss Peterson took them into a fitting room, a room about 8 feet square, containing two chairs and a small table, with hooks on the wall on which to hang dresses, and but one door for ingress and egress. It was one of 35 fitting rooms situate along a corridor or hallway which led from the public showroom. Miss Peterson carried with

her a number of the dresses and hung them on hooks in the fitting room, and immediately was called to the telephone, returning after an absence of four or five minutes. During Miss Peterson's absence, Mrs. Elstun removed her own dress and placed it on a chair in the fitting room, with the brooch securely fastened to it, and proceeded to try on the dresses which Miss Peterson had left in the fitting room. When Miss Peterson returned, she observed that Mrs. Elstun had her own dress off and was putting on one of the other dresses. Miss Peterson did not notice the brooch. She had seen it time and time again, worn in the store by Mrs. Elstun, and was familiar with it. Asked if she had seen the dress with the brooch attached that day, she said, "No, I did not pay any attention, because I was interested in the dresses I was showing."

Yet, the brooch was in plain view, to anyone in the fitting room, until almost the very end of the shopping interview, which lasted about two hours. Mrs. Hihn remembered seeing the brooch throughout that period, until the very last. She observed the dress, with brooch attached, on the chair, as late as three to five minutes before she and Mrs. Elstun discovered that the dress was gone.

During all that period, Mrs. Elstun and Mrs. Hihn remained in the fitting room. Miss Peterson came and went, bringing dresses and after their rejection taking them away and bringing others. Upon several occasions she left to answer a telephone call. No other person entered the fitting room during that period. When Mrs. Elstun selected some dresses, Miss Peterson picked up those that remained (some from the chair on which Mrs. Elstun had placed her dress) and left to take them to the stock room. Thereupon Mrs. Elstun looked for the dress she had been wearing and discovered it was gone. Upon Miss Peterson's return, Mrs. Hihn said to her, "You have taken mother's dress, and mother's pin is on the dress"; in respect to which Miss Peterson testified, "Well, I just got so upset about it, I just flew out, in two minutes I was in the stock room; when I got in there, there was her mother's dress hanging on the receiving rod. It had been there two or three minutes." The brooch was gone. The practice in the stock room was that when a dress was returned without a hanger it was placed upon a table and a stockgirl would then place it on a hanger and return it to the racks. Mrs. Elstun's dress was not on a hanger in the fitting room, and when found in the stock room was on a hanger, on the receiving rod.

Upon discovering that the brooch was missing, Miss Peterson called the buyer, who called the manager, and he in turn called the house detective. A search of the fitting room and the stock room was made. The detective questioned the two girls who were on duty at the time in the stock room, and several other employees. He also notified the police. About 35 salespeople, three stock-room girls and six models employed by appellant have access to the stock room. The detective questioned about five or six of these employees.

One of the questioned findings is "That it is true that at said time and place, defendant, acting by and through its employee and agent, Miss Peterson took possession, and custody of said diamond brooch, without the consent or permission, express or implied, of plaintiffs." This finding is literally true. Miss Peterson did take possession and custody of the dress with the brooch attached to it. She did so without the consent or permission of Mrs. Elstun. Her act in so doing was that of appellant, her employer, because committed during the course of her employment in showing, fitting and selling dresses to appellant's customer, Mrs. Elstun. Appellant's principal criticism of this finding is that Miss Peterson did not know she had possession of the dress or the brooch when she picked up the dress, with brooch attached, and took them from the fitting room across the public showroom toward the stock room. The answer is that this finding is silent on that score. It says nothing about the knowledge or lack of knowledge with which appellant took possession of the brooch.

The other finding which appellant claims is insufficiently supported by the evidence, reads as follows: ". . . it is true that defendant so carelessly and negligently took possession and custody of said dress to which was attached said brooch, and so carelessly and negligently conducted themselves with respect thereto, that as a direct result thereof, said brooch was lost to plaintiffs; that thereby plaintiffs have been damaged in the sum of $4,612.50, the reasonable value of said diamond brooch." To be considered with this finding is the conclusion of law that "defendant became liable to plaintiffs in the amount of $4,612.50 and plaintiffs are entitled to judgment against defendant in said amount, together with their costs of suit." This finding is supported by the evidence. The conclusion is in accordance with law.

The dress with brooch attached lay on a chair in the fitting room, plainly visible to a person in that room, for a period of about two hours. Miss Peterson frequented that

room during that period. She knew that Mrs. Elstun had removed her dress. She was familiar with the brooch and knew that Mrs. Elstun was accustomed to wearing it, having observed her wearing it in the store on many previous occasions. These facts support the implied finding that Miss Peterson, and hence her employer, the appellant, should have known and been aware of the presence and location of the dress and the brooch on this occasion. Charged with this knowledge, appellant, through Miss Peterson, took the dress and brooch into and across appellant's public showroom (which was frequented by customers and other members of the public as well as appellant's employees) into appellant's stock room (frequented by or accessible to more than 40 of appellant's employees) and placed the dress on a table with dresses belonging to appellant. These facts support an implied finding that loss of the brooch was likely to occur if removed from the privacy and relative safety of the fitting room, and that such loss was foreseeable. Miss Peterson's very agitation, when informed that she had taken the dress away and that the brooch was attached to it, was some evidence of the foreseeability of the risk of loss attendant upon such a removal. Such a loss did in fact occur. The monetary measure of that loss to plaintiffs is $4,612.50, the stipulated value of the brooch.

Here are all the elements of an actionable wrong, especially when considered in the light of the duty which appellant owed Mrs. Elstun as its business invitee. ▮ A retailer impliedly invites the public to enter his store and do business, and thereby undertakes to exercise reasonable care for the protection of property which the customer properly brings there and necessarily lays aside while doing business pursuant to the invitation. This principle was expressed in *Bunnell* v. *Stern,* (1890) 122 N.Y. 539 [25 N.E. 910, at 911, 19 Am.St.Rep. 519, 10 L.R.A. 481], in these words: "The defendants kept a store, and thus invited the public to come there and trade. In one of its departments they kept ready-made cloaks for sale, and provided mirrors for the use of customers in trying them on, and clerks to aid in the process. They thus invited each lady who came there to buy a cloak, to remove the one she had on, and try on the one that they wished her to purchase, because the invitation to do a given act extends by implication to whatever is known to be necessary in order to do that act." In that case it appeared that the plaintiff customer removed her cloak to try on a new cloak, placing her own on a counter which was the only available place

for it. The clerk serving her and the clerk at the counter saw her do it. After the fitting, she discovered that her own cloak was gone. Defendants had no explanation for the loss. ''Under these circumstances we think that it became their [defendants'] duty to exercise some care for the plaintiff's cloak, because she had laid it aside upon their invitation, and with their knowledge, and without question or notice from them, had put it in the only place that she could. The consideration for the implied contract imposing that duty resided in the situation of the plaintiff and her property, for which the defendants were responsible, and in the chance of selling the garment that she had selected.'' (*Id.*, p. 911.) This duty is like the duty of a proprietor to keep his premises safe for his business invitees. ''As the defendants were bound to use ordinary care to keep their premises in a safe condition for the access of business visitors, whether expressly or impliedly invited [citations], so, we think, they were bound to use some care for the property of the plaintiff, properly brought there, and necessarily laid aside by their implied invitation in order to attend to the business in hand.'' (*Id.*, p. 911.) Those principles apply here. Appellant, in making available a fitting room for the exclusive use of the customer, acted consistently with its duty of exercising reasonable care for the protection of the dress and brooch which its customer necessarily laid aside while attending to the business in hand. But appellant, charged with notice and knowledge of the brooch as well as of the dress, failed in the performance of that duty, violated that obligation, when it negligently removed the dress and brooch from this place of relative safety. The trier of the facts has so found and the evidence supports his finding.

Appellant contends that the principle enunciated in the Bunnell case does not apply here because the brooch, unlike the dress, was not property necessarily or so commonly worn as to be within the scope of the invitation unless its presence were brought specially to the notice and attention of appellant. A brief review of the cases upon which appellant relies will demonstrate the fact that they are not essentially inconsistent with the views we have expressed. In *Powers* v. *O'Neill*, 68 N.Y.St.Rep. 842 [34 N.Y.S. 1007], the plaintiff went to defendant's store to buy a hat. While trying on hats she took off her own and laid it on a counter, placing her purse underneath the crown of her hat. In a very few minutes the purse disappeared. The storekeeper was held not liable,

upon the ground that there was no implied invitation to plaintiff to lay down her pocketbook containing her money. "It was not necessarily laid aside by her for the purpose of trying on the bonnet which she intended to purchase, and therefore there was no implied invitation for her to do so." (Pp. 1008-9. In *Barnes* v. *Stern Bros.*, 89 Misc. 385 [151 N.Y.S. 887], a customer being fitted to a new suit left his own trousers in a dressing room used by others as well as himself. Also, that room bore a sign, "Not responsible for customers' garments or other property unless left at the credit desk on this floor." He left his wallet containing $185 in his trousers and made no mention of that fact to the salesman. The wallet disappeared. The court held that under these circumstances the storekeeper became bailee of the trousers but not of the wallet and contents, saying, "In the absence of knowledge that plaintiff had left the money in the dressing room, and in the absence of an invitation, either express or implied, so to do, there could be no bailment." (P. 888.) In *Feder* v. *Franklin Simon & Co.*, 157 N.Y.S. 895, a customer, about to be fitted for a dress, placed her own clothes and purse on a chair. The purse was lost. The court held that the implied invitation to lay aside the coat (known to be necessary in order to transact the business in hand) did not include an invitation to the customer to lay aside, and an assumption by the storekeeper to assume responsibility for, the purse which she was carrying; she could well have tried on the dress and yet continued to keep the purse in her own custody. In *Woodruff* v. *Painter*, 150 Pa. 91 [24 A. 621, 30 Am.St.Rep. 786, 16 L.R.A. 451], a customer, about to try on a new suit, took off his coat and vest and, at the suggestion of the salesman, put his watch in a certain drawer. After a time they returned and opened the drawer, but the watch was gone. The trial court granted the storekeeper a nonsuit. The judgment thereon was reversed upon appeal. The reviewing court considered that there were facts sufficient to go to the jury for determination of the relevant issues, including the question whether or not a watch was such a personal belonging as men usually carry that in the selection of a suit of clothes it is necessary or usual to remove it from the person and lay it aside. In *Delmour* v. *Forsythe*, 128 N.Y.S. 649, the plaintiff customer selected several shirtwaists in the general showroom and was ushered by the salesclerk into a small fitting room. Upon entering the fitting room she removed her watch, which had been attached to her coat by

a gold pin, then removed her coat and placed both upon a small table in the fitting room. This was done in full view of the salesclerk, who told her to place her things upon this table while she removed her waist for the purpose of being fitted. Upon the conclusion of the fitting, plaintiff could not find her watch. A judgment for plaintiff was affirmed upon appeal upon the ground that defendant was under a duty to exercise some degree of care in reference to plaintiff's coat and watch. The facts justified a finding by the trial court that the storekeeper exercised no care whatever. In conclusion, the reviewing court said, ''I think that the evidence in this case presented merely a question of fact, and that the decision of the learned trial justice is sustained by the evidence.'' (P. 650.)

The trend of these decisions is that a storekeeper is charged with the exercise of some degree of care for the protection of those garments which a customer necessarily removes when he tries on new garments at the store. ■ The storekeeper may be charged with the duty of protecting other articles (money, a watch, jewelry) which the customer carries with him and must lay aside while being fitted, depending largely upon the fact that notice of these other articles is brought home to the storekeeper. ■ In the instant case we cannot say as a matter of law that appellant was not chargeable with notice of the brooch. The evidence shows without conflict that the brooch was plainly visible to appellant's representative for a period of two hours, a representative who knew that this particular customer was in the habit of wearing this very brooch. These facts differentiate this case from the Painter, Barnes and Feder cases and assimilate it to the factual situation which obtained in the Woodruff and Delmour cases.

■ Then there is the additional element of negligent interference with the dress and brooch. Appellant took them from a place of safety to a place of hazard. That is conduct of an affirmative character (no mere failure to deliver goods upon demand) which the trier of the facts found was the efficient cause of the loss. It is somewhat akin to a misdelivery of goods, which the court in *Jacobson* v. *Richards & Hassen Enterprises,* 172 F.2d 464, observed is in marked contrast to a mere nondelivery of goods on demand.

The California case upon which appellant principally relies is *Copelin* v. *Berlin Dye Works etc. Co.,* 168 Cal. 715 [144 P. 961, L.R.A. 1915C 712]. Plaintiff therein delivered some clothes to be cleaned. In a pocket there was a bag which

contained rings and earrings. Defendant discovered and returned the rings but found no earrings. The court held that defendant was not legally responsible for loss of the earrings in the absence of knowledge that it possessed them. That is quite understandable. There is nothing about the mere acceptance of the possession of a suit of clothes for cleaning purposes to put one on notice that the pockets contain valuable jewelry, or to charge one with the duty of safely keeping such jewelry unless and until he learns that he has it in his possession.

Appellant also argues that respondents were negligent and that their negligence contributed to the loss of the brooch. That was not pleaded as a defense to the action, nor otherwise presented to the trial court for consideration. It is too late to present that question for the first time upon appeal. (See cases cited in 19 Cal.Jur. 681, Negligence, § 104.)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.