**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ellen Mae DIX, Defendant-Appellant.**

**No. 73-1264.**

United States Court of Appeals,
Ninth Circuit.

Jan. 29, 1974.

Robert M. Talcott (argued), of Angus, Bothman & Talcott, Sherman Oaks, Cal., for defendant-appellant.

William D. Keller, U. S. Atty. David P. Curnow, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and TURRENTINE,* District Judge.

CHAMBERS, Circuit Judge:

Here we have an appeal from a judgment of conviction in federal court for stealing property that was "in the care, custody, control, management, or possession" of a national bank (18 U.S.C. § 2113(b)). The best point that the appellant, Mrs. Dix, has is that even if she did do something wrong it was not within the purview of the federal courts.

Mrs. Dix was a distant relative of A. B. Malouf, a wealthy man of advancing years who lived in Los Angeles. Mrs. Dix's mother was both a relative and close friend of Mrs. Malouf. After a lifetime of business experience, primarily in the ladies' ready-to-wear industry,

---

* The Honorable Howard B. Turrentine, United States District Judge for the Southern District of California, sitting by designation.

Malouf had put considerable of his wealth into bonds, largely negotiable municipal bonds. Malouf kept his bonds in three safe deposit boxes at a branch of Bank of America in Los Angeles. Because of his failing eyesight, he required the assistance of a personal secretary to help him handle his bonds. Such a secretary had left his employ in late 1971 or early 1972. In early 1972, Mrs. Dix went to work for Malouf as his private secretary.

As private secretary to Malouf, Mrs. Dix was to help him with correspondence and his business affairs. Her particular responsibility with regard to the bonds was to accompany Malouf on his visits to the bank where the bonds were kept. At the bank, she would go into the bank's conference room with Malouf and one or more of the safe deposit boxes. There, she would follow his instructions in clipping coupons and preparing them for transmission to the payor.

Giving the weight which we must to the jury verdict, Mrs. Dix seized an opportunity on April 3, 1972, to take $315,000 worth of negotiable bonds while she was helping him clip coupons at the bank. She gave them to her accomplice, Ronald Gregory Johnson, who attempted to sell the bonds. In attempting to sell the bonds, Johnson employed an elaborate scheme involving false names, forged identification, and disguises. The scheme was foiled when an officer of a bank where Johnson had opened an account in a false name became suspicious and summoned FBI agents.

Mrs. Dix does not deny that she had the bonds, nor does she deny knowing about the manner in which Johnson sought to dispose of them. She asserted at trial and continues to claim on appeal that Malouf gave her the bonds out of affection. The government's case was a web of circumstantial evidence tending to show theft rather than gift. The jury believed the government and rejected Mrs. Dix's story. We find the evidence sufficient and accept the verdict.

Mrs. Dix makes several claims of error on the part of the trial judge. She attacks his instructions, his ruling on evidentiary matters, and his handling of witnesses. We have considered each point, and we find no prejudicial error.

■ The only problem we find in the case is deciding whether the theft of the bonds from Malouf while he had the bonds out of the vault in order to clip coupons in the conference room was a federal crime.

The language of the statute is broad. It covers thefts not only of property within the possession of the bank but also of property within the care, custody, control or management of the bank. We hold that when Malouf took his safe deposit boxes into the bank's conference room to examine or otherwise deal with the contents of the boxes, those contents were within the care of the bank, and the theft of some of those items was a crime within the contemplation of § 2113(b).

In Chapman v. United States, 346 F. 2d 383 (9th Cir.), cert. den. 382 U.S. 909, 86 S.Ct. 249, 15 L.Ed.2d 161 (1965), a former bank employee used a key to the front door of the bank, which she had either kept or copied, to enter the bank after regular hours. She then stole books and papers from the desk of her successor. Some of the stolen items were property of the bank, and some were the property of Mrs. Chapman's successor. In response to a claim very similar to that made in the present case, we said,

> This property, including Miss Hall's personal documents, were, while owned by her and used by her in the performance of her duties at the bank and left there when she left for the day (and even while she was there for the day), "within the care, custody or control of the bank," and thus within the statute here involved. 346 F.2d at 387.

■ The Chapman opinion does not make altogether clear the basis for finding the property within the statute.

However, reference to the law of negligence illuminates the meaning of the word "care." The bank owes a duty of care to its customers, just as any business owes to its business invitees, to maintain its premises in a condition reasonably fit for the carrying on of the banking business. The duty extends to protection from unreasonable risk of harm by robbers or other potential assailants or thieves. See, e. g., Sinn v. Farmer's Deposit Savings Bank, 300 Pa. 85, 150 A. 163 (1930); Murray v. Modoc State Bank, 181 Kan. 642, 313 P.2d 304 (1957); Boyd v. Racine Currency Exchange, Inc., 8 Ill.App.3d 140, 289 N.W.2d 218 (1972).

■ In addition, there is a duty to exercise reasonable care for the protection of property which the customer properly brings into the premises. Fuller v. I. Magnin & Co., 104 Cal.App.2d 517, 232 P.2d 36 (1st Dist., 1951).

We conclude, based on Chapman, supra, and on the duty of care which the bank owes to its customers, that the bonds stolen here were in the "care" of the bank, even though this duty did not extend to requiring or permitting the bank[1] to follow Malouf into the conference room where the coupon clipping chore was performed.

In other words, the duties of care owed to Malouf and his property provide us with sufficient nexus to say the bonds at the time they were filched in the bank were in the bank's care and Malouf's care.

The judgment is affirmed.

HUFSTEDLER, Circuit Judge (dissenting):

I cannot agree that this case falls within the ambit of 18 U.S.C. § 2113(b).

Once the bonds were delivered to Mr. Malouf, the bank had no legitimate interest in what he did with his property. The relationship of the bank to the bonds after it returned them to Mr. Malouf was no different from its relationship to cash delivered to a customer at a teller's window and placed by the customer in his wallet. In neither instance is the property "in the care, custody, control, management, or possession" of the bank within the meaning of section 2113(b). (*See* Lubin v. United States (9th Cir. 1963) 313 F.2d 419.)

Of course, the bank owed a duty of care to Mr. Malouf, "just as any business owes to its business invitees," to protect the customer from unreasonable risk of harm to his person. But the "care" to which section 2113 is addressed is not the common law duty of care to the person, but rather care of property belonging to the bank or entrusted to it, as the words of the statute itself make plain: "Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank [is subject to prescribed punishment]." (18 U.S.C. § 2113(b). *See also* Way v. United States (10th Cir. 1959) 268 F.2d 785, 786 (purpose of § 2113(b) is to protect the financial stability of the Federal Reserve Bank System).)

Chapman v. United States (9th Cir. 1965) 346 F.2d 383 is not in point. Chapman stole property of the bank, as well as personal property of an employee, used by the employee in the performance of bank duties, left in a desk drawer in the bank. Chapman argued that property not owned by the bank could not be taken in violation of section

---

1. Both parties devote substantial portions of their briefs to a discussion of bailment. The government's "joint possession" argument has appeal and authority. See Lamus v. Engwicht, 39 Cal.App. 523 (1919). However, we decline to discuss the law of bailment, since bailment depends on possession of the bailed article (Earhart v. Callan, 221 F.2d 160 (9th Cir., 1955)), and our statute speaks of broader concepts than possession alone.

2113(b). We held only that the fact that some of the items stolen "did not belong and had never 'belonged' to the bank, as appellant urges, is immaterial," since the employee's property was "'within the care, custody or control of the bank' and thus within the statute here involved." (346 F.2d at 387.)

The majority's unwarranted extension of criminal liability under section 2113(b) disregards a fundamental principle of statutory construction. The Supreme Court has noted that "Congress has traditionally been reluctant to define as a federal crime conduct readily denounced as criminal by the States," (United States v. Bass (1971) 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488) and has recognized that broad construction of federal penal statutes could alter sensitive federal-state relationships and could overextend limited federal police resources. (Rewis v. United States (1971) 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493.) Consequently, the Court has held that an enlargement of federal criminal jurisdiction will not be approved "unless Congress conveys its purpose clearly." (United States v. Bass, *supra* 404 U.S. at 349, 92 S.Ct. at 523, *see* LeMasters v. United States (9th Cir. 1967) 378 F.2d 262, 268.) The majority's construction of "care" depends, at best on the ambiguity of that word as it is used in section 2113(b).

If the majority's interpretation of section 2113(b) is correct, moreover, it suggests that banks will now be exposed to a new range of civil liability. If the bank's duty to protect Mr. Malouf from an unreasonable risk of harm extends to protecting his property from potential theft by his employee, are not banks facing future civil damage suits of major proportions? In this case, the exposure of Mr. Malouf's bank would be $315,000.

I would reverse.