UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Winfred CARPENTER, Jr.,
Defendant-Appellant.

No. 79–5209
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 4, 1980.
Rehearing Denied March 7, 1980.

* Fed.R.App.P. 34(a);  5th Cir. R. 18.

Gary Hagman, Weatherford, Tex., for defendant-appellant.

John H. Hannah, Jr., U.S. Atty., Heriberto Medrano, Asst. U.S. Atty., Tyler, Tex., for plaintiff-appellee.

Before BROWN, TJOFLAT and FRANK M. JOHNSON, Jr., Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This appeal concerns an attempt to extort $38,000 from a federally insured bank by means of kidnapping the son of two of the bank's officers. For this crime, Charles Winfred Carpenter, Jr. was convicted of violating the Hobbs Act, 18 U.S.C.A. § 1951, and sentenced to five years in prison. He appeals the conviction, contending that (i) he did not commit a federal crime because the attempted extortion was directed solely at the parents of the kidnapped victim, not at the bank, (ii) the exclusive federal remedy for the crime was the Bank Robbery Act, 18 U.S.C.A. § 2113, not the Hobbs Act, and (iii) incriminating statements admitted at trial were obtained in violation of the Fifth Amendment. We affirm.

## I.

Jeff Austin, III, was abducted from his home on the morning of October 18, 1978. Jeff is the son of Jeff Austin, Jr. and Sissy Austin, the president and vice-president, respectively, of the First National Bank of Jacksonville, Texas. The abductor, without asking Jeff where his parents worked, then proceeded to dial the telephone number of the bank and to force Jeff to attempt to speak to either or both of his parents. Jeff spoke to Mrs. Austin and indicated that his abductors wanted $38,000 for Jeff's safe return. Further telephone calls directed Mrs. Austin to begin a series of steps resulting in her leaving the money at a spot near "Love's Lookout."

The first drop off of the money was unsuccessful, however. Yet another call was placed to Mrs. Austin in order to arrange a second drop off for the money. During that telephone conversation, the abductor stated that "the bank" had interfered with the first drop off. Mrs. Austin was directed to make sure that bank personnel did not interfere a second time. She was also told to "call *the bank* and again have $38,000 of money packaged in tens and twenties. . . ." Mrs. Austin complied and delivered a second package of money to a different location, where the money was picked up by two young boys. The boys later identified Carpenter as the man who promised to pay them for picking up the money.

These facts establish that the extortion was directed at the bank and not solely at the parents. Both parents were officers of the bank, with authority to direct the use of bank monies. A very large amount of money was demanded. The abductor knew without asking that both parents worked at the bank. And statements made over the telephone also indicated that the abductor was looking to the bank's assets for payment, not solely to the assets of the parents.

Under very similar facts, the Eighth Circuit has rejected Carpenter's argument. *United States v. Johnson,* 516 F.2d 209, 214, *cert. denied,* 1975, 423 U.S. 859, 96 S.Ct. 112, 46 L.Ed.2d 85. Moreover, we stated in *United States v. Gupton,* 5 Cir., 1974, 495 F.2d 550, that it is only necessary to show that the "extortionate behavior [was] *likely to have the natural effect* of obstructing commerce." *Id.* at 551 (emphasis supplied). The abduction and extortionate telephone calls in this case were certainly *likely* to cause the bank's assets to be drawn upon. And in fact the bank's assets, not those of the parents, were used. There was certainly adequate evidence from which a jury could have concluded that the extortion was directed against the bank. *Glasser v. United States,* 1942, 315 U.S. 60, 62 S.Ct. 457, 86

L.Ed. 680; *United States v. Malatesta,* 5 Cir., 1979, 590 F.2d 1379 (en banc). We therefore reject Carpenter's first point of error.

## II.

■ The contention that the Bank Robbery Act is the exclusive federal remedy for cases involving extortion on banks would have been a more substantial argument prior to the Supreme Court's recent decision in *United States v. Culbert,* 1978, 435 U.S. 371, 98 S.Ct. 1112, 55 L.Ed.2d 349.[1]

In *Culbert,* the defendant was convicted in the District Court of attempted bank robbery under 18 U.S.C.A. § 2113(a) and of extortion under the Hobbs Act. As in Carpenter's case, the *Culbert* defendant had used telephoned threats in an attempt to force a bank officer to leave a large amount of bank money at a specified location. On appeal to the Ninth Circuit, the Bank Robbery Act conviction was abandoned by the Government.[2] Consequently, the Supreme Court considered the issue of whether the Hobbs Act covered bank extortion. 435 U.S. at 372 n. 1, 98 S.Ct. at 1113 n. 1, 55 L.Ed.2d at 351 n. 1.

■ In a broadly worded opinion, the Hobbs Act conviction was sustained. The *Culbert* opinion focused on a rejection of the Ninth Circuit's theory that the Hobbs Act was limited to "racketeering" crime. But an examination of the precise facts and issue in *Culbert* makes clear that *Culbert's* holding was that the Hobbs Act may be used to prosecute attempted bank extortions. Thus, on the basis of *Culbert's* holding, Carpenter's second point of error is easily rejected.[3]

---

1. There are no Double Jeopardy concerns here, nor does Carpenter argue any. Carpenter was convicted and sentenced under only one statute—the Hobbs Act. Thus, *United States v. Golay,* 8 Cir., 1977, 560 F.2d 866, 869–70, and *United States v. Beck,* 6 Cir., 1975, 511 F.2d 997, 999–1000, are distinguishable.

2. *United States v. Culbert,* 9 Cir., 1977, 548 F.2d 1355, 1356–57. The Ninth Circuit relied not only on the Government's abandonment but also upon the argument that attempted bank extortion did not fulfill 18 U.S.C.A. § 2113(a)'s requirement that the money be taken "from the person or presence of" the bank officer.

The Government apparently withdrew its concession by the time that the case reached the Supreme Court, 435 U.S. at 372 n. 1, 98 S.Ct. at 1113 n. 1, 55 L.Ed.2d at 351 n. 1, and attempted to reargue the issue after the Supreme Court remanded the case to the Ninth Circuit. There, the Ninth Circuit adhered to its dismissal of the Bank Robbery Act count, however, "for the reasons set forth in our first opinion . . ." *United States v. Culbert,* 1978, 581 F.2d 799.

3. While we rely on *Culbert,* yet another consideration supports our disposition of this issue. For even assuming (i) *Culbert* inapplicable and (ii) that the Bank Robbery Act unambiguously covered the crime of bank extortion, indictment under the more lenient Hobbs Act was an acceptable exercise of prosecutorial discretion. Indeed, a long line of cases has held that where an act violates more than one criminal statute, the Government can prosecute under even the harshest statute which proscribes the act. *E. g., United States v. Beacon Brass Co.,* 1952, 344 U.S. 43, 46, 73 S.Ct. 77, 79, 97 L.Ed. 61, 65; *United States v. Carter,* 5 Cir., 1976, 526 F.2d 1276, 1277–78; *United States v. Smith,* 5 Cir., 1975, 523 F.2d 771, 780 (identical felony and misdemeanor statutes involved); *United States v. Chakmakis,* 5 Cir., 1971, 449 F.2d 315, 316 (identical felony and misdemeanor statutes involved); *Ehrlich v. United States,* 5 Cir., 1956, 238 F.2d 481, 485.

Nor is it significant that the identical facts might prove both a Hobbs Act and a Bank Robbery Act violation. *United States v. Smith, supra; United States v. Chakmakis, supra.* This is not a *Blockburger v. United States,* 1932, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309, situation involving cumulative punishment, or even dual prosecution, under the two statutes. The legislative history of the two statutes gives no indication of whether one statute or the other is to be exclusive with respect to bank extortion. *See United States v. Culbert,* 9 Cir., 1977, 548 F.2d 1355, 1359 (Carter, J., dissenting), *rev'd,* 435 U.S. 371, 98 S.Ct. 1112, 55 L.Ed.2d 349; *United States v. Marx,* 10 Cir., 485 F.2d 1179, 1182, *cert. denied,* 1973, 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764. Where this is the case, the recent Supreme Court case of *United States v. Batchelder,* 1979, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755, permits prosecution under even the statute with the greater penalty.

In *Batchelder,* two separate provisions of the same Act of Congress prohibited felons from receiving firearms. One provision carried a five-year maximum, the other a two-year maximum sentence. The Court held that the Government was free to prosecute under the more punitive statute. In reaching that result, it stated:

### III.

Carpenter lastly contests the admission of certain incriminating statements which he made shortly after his arrest. In so doing, he attempts to immerse us in a caldron of questions concerning the Fifth Amendment, which has been percolating in the lower courts since *Brewer*.[4] Factual findings properly made by the District Court place us well outside this caldron, however. Instead, we rely upon other long-standing and unimpeached precedent in rejecting Carpenter's last point of error.

■ Carpenter made a number of incriminating statements soon after his arrest by FBI agents Kieny and Meese, on the evening of October 18, 1978.[5] At the scene of the arrest, the agents advised Carpenter of his *Miranda*[6] rights, both orally and in writing. After each warning, Carpenter indicated that he wanted to consult an attorney before making a statement. Shortly thereafter, the two agents set out with Carpenter for the local FBI office. The twenty-minute automobile ride was interrupted once by a stop at a restaurant in order to get a soft drink for Carpenter.

During the automobile trip, Carpenter made the incriminating statements admitted at trial and challenged here.

Both agents testified that during the trip they engaged in sporadic conversation between themselves concerning "everyday" matters, but at no point spoke about the Carpenter case or any other FBI matter. Both agents also testified that the only question asked Carpenter was whether he wanted a soft drink. Carpenter's statements came during "some long periods of silence, at which Mr. Carpenter apparently felt like he had to say something, and he did."

The defendant's version was quite different. Carpenter essentially testified that the FBI agents engaged in a form of subtle interrogation during the automobile trip, similar to but not so dramatic as the "Christian burial" speech of Police Officer Leaming in *Brewer*. Carpenter testified that the agents made several statements about the extortion, including remarks that, "It sure was a sloppy job," that the agents couldn't understand how his girlfriend got involved, and that another case which the agents

---

Nor can [one statute] be interpreted as implicitly repealing [the other] whenever a defendant's conduct might violate both . . . For it is "not enough to show that the two statutes produce differing results when applied to the same factual situation." . . . *Rather, the legislative intent to repeal must be manifest in the " 'positive repugnancy between the provisions.*'" . . .
*Id.* at 122, 99 S.Ct. at 2203, 60 L.Ed.2d at 763 (citations omitted) (emphasis supplied). Thus *Batchelder* certainly allows the Government to choose the equally lenient or more lenient Hobbs Act when prosecuting bank extortions such as Carpenter's. *See United States v. Brown*, 9 Cir., 1979, 602 F.2d 909 (applying *Batchelder* to a situation involving 18 U.S.C.A. § 2113(a)).

4. *Brewer v. Williams*, 1977, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424. For indications of the content of the caldron, see: *Stanley v. Wainwright*, 5 Cir., 1979, 604 F.2d 379, 382; *United States v. Boyce*, 9 Cir., 1979, 594 F.2d 1246, 1250–51; *United States v. McCain*, 5 Cir., 1977, 556 F.2d 253; *United States v. Jordan*, 5 Cir., 1977, 557 F.2d 1081, 1083–86. *See generally* Kamisar, *Brewer v. Williams, Messiah, and Miranda: What is "Interrogation"? When Does It Matter?*, 67 Geo.L.J. 1 (1979). One case involving facts similar to those alleged by Car-

penter (but rejected by the District Court) is under consideration by the Supreme Court at present. *Rhode Island v. Innis*, R.I., 391 A.2d 1158, *cert. granted*, 1978, 440 U.S. 934, 99 S.Ct. 1277, 59 L.Ed.2d 492.

5. The statements in question were certainly not harmless beyond a reasonable doubt. *United States v. Stewart*, 5 Cir., 1978, 576 F.2d 50, 55–56. It is uncontested that Carpenter stated that his girlfriend was not involved in "this matter" and that he had purposely quarreled with her in order to get her away from Love's Lookout (where the money was first left by Mrs. Austin). *Cf. United States v. Robertson*, 5 Cir., 1978, 582 F.2d 1356 (en banc) (incriminating statements made by defendants attempting to prevent their wives from being charged by the police). He further stated, "A man does strange things with these kinds of [financial] pressures." And in the presence of one FBI agent, Carpenter spoke of his financial problems and stated that he wasn't in charge of "this thing", but instead that he took all of his orders over the telephone.

6. *Miranda v. Arizona*, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

were investigating was a much more "professional job." The agents, however, on cross-examination, denied making any such statements.[7]

 After hearing both versions, the Trial Judge permitted the agents to testify before the jury concerning Carpenter's statement. The Judge found that "in spite of the fact that [Carpenter] said that he wanted counsel, the FBI did not ask any question of the defendant . . . and voluntarily, without any questioning on the part of the FBI agents, [Carpenter] made the statements that he made." While this finding speaks in terms of "questioning," it is truly a finding—when read in context with the rest of the record—that the FBI agents *neither* made *Brewer*-type "statements" nor posed "questions" as such. The Trial Judge was certainly permitted to credit only the testimony of the FBI agents. The Judge's finding is not clearly erroneous.

 We have frequently faced the situation in which a defendant invokes his *Miranda* rights and then, without further accusatory statements or questioning by the authorities, initiates a statement which turns out to be incriminating. Such spontaneous, unprovoked statements do not violate the principles of *Miranda,* simply because the requisite element of Government "interrogation" is lacking. Consequently, we have uniformly upheld the admission of such statements. *E. g., United States v. Rieves,* 5 Cir., 1978, 584 F.2d 740, 743–44, 745–46; *United States v. Savell,* 5 Cir., 1977, 546 F.2d 43, 45–46; *Pilcher v. Estelle,* 5 Cir., 1976, 528 F.2d 623, 625; *United States v. Hopkins,* 5 Cir., 1970, 433 F.2d 1041, *cert. denied,* 1971, 401 U.S. 1013, 91 S.Ct. 1252, 28 L.Ed.2d 550; *Sellers v. Smith,* 5 Cir., 1969, 412 F.2d 1002, 1005. *See also Miranda v. Arizona, supra,* 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726 ("volunteered statements of any kind are not barred by the Fifth Amendment"); *United States v. Cobbs,* 3 Cir., 481 F.2d 196, 200–01,

cert. denied, 1973, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224; *Cannistraci v. Smith,* S.D. N.Y., 1979, 470 F.Supp. 586, 590–92. We therefore escape the *Brewer* caldron that Carpenter would place us in, and reject his final point of error.

AFFIRMED.

---

7. The only, slight qualification is that one agent, Mr. Kieny, stated that he did not *remember* discussing another, more "professional" bank theft. Thus Agent Kieny did not flatly state that the subject was not in fact discussed.