**The UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gary Don VAN and Frederick Oliver, Defendants-Appellants.**

No. 86–1283.

United States Court of Appeals, Fifth Circuit.

April 1, 1987.

William Mark Berton, Dallas, Tex. (Court-appointed), for Van.

* District Judge of the Northern District of Texas,

Thomas A. Blakeley, Jr., Dallas, Tex. (Court-appointed), for Oliver.

Marvin Collins, U.S. Atty., William F. Alexander, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before REAVLEY and RANDALL, Circuit Judges, MAHON *, District Judge

MAHON, District Judge:

Appellants Gary Don Van and Frederick Oliver were convicted under 18 U.S.C. § 2113(e) for bank robbery and under 18 U.S.C. § 2 for aiding and abetting in a bank robbery. Van and Oliver appeal their convictions, contending that the facts of this case do not constitute a bank robbery. In order to be convicted under subsection (e) of 18 U.S.C. § 2113, one must have violated another subsection of 18 U.S.C. § 2113. Subsection (a) is the applicable provision in this case. Subsection (a) and (e) of section 2113 provide:

> (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or savings and loan association ...

> Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both....

> (e) Whoever, *in committing any offense defined in this section,* or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if

sitting by designation.

the verdict of the jury shall so direct. (emphasis added)

18 U.S.C. § 2113(a) and (e) (1984).

## FACTS

Juda Agnes Bradley, and her five children, lived in a small house in Dallas with her mother and her grandmother. The evidence shows that Bradley received a $7,000.00 settlement for a social security claim in mid-December 1985. Appellants Gary Don Van and Frederick Oliver broke into Bradley's home during the very early hours of December 25, 1985 and demanded that Bradley give the money to them and eventually threatened to kill her if she did not do so. Bradley convinced the appellants that she had spent some of the settlement money and that she had deposited the remainder in a bank. The testimony showed that the appellants then committed various acts of violence and sexual abuse against Bradley, her mother, and Bradley's teenage daughter while holding them at gun point.

Shortly before dawn, the appellants left Bradley's home taking Bradley's two year old daughter with them. They told Bradley that they would hold the child until she delivered the money to them that she had in her bank account.

After sunrise, Bradley went to the Dallas Sheriff's Office, where she reported the acts to which she and her family had been subjected. The Sheriff's Office contacted the Federal Bureau of Investigation (F.B. I.), and they immediately began to work on the case.

During the morning of December 26, 1985, Bradley received a telephone call in her home from Clara Titus, a co-defendant in this case who entered a plea of guilty. Titus instructed Bradley to withdraw the money from her account at Guaranty Bank, which is located at the intersection of Highway I–35 and West Kiest, and then drive to a 7–Eleven store located at the intersection of Sunnyvale and Loop 12. Titus told Bradley that she would receive another telephone call on a telephone located in front of the 7–Eleven store.

Bradley left her home and proceeded to the bank in her car as instructed. An F.B.I. agent, who was lying in the back seat of the car, and a friend of Bradley's accompanied her in the car. The evidence shows that Bradley had on deposit $4,032.01 in her account. She withdrew $4,000.00, leaving a balance of $32.01. After completing the withdrawal, Bradley drove to the designated 7–Eleven store. She exited her car and waited by a row of telephones. One of the telephones rang and Bradley answered it. The telephone call was from Titus who further instructed Bradley to drive to a second 7–Eleven store, located at the corner of Jim Miller and Loop 12, where she would receive another telephone call.[1]

Bradley drove to the second 7–Eleven store with the F.B.I. agent still lying on the back seat of the car. Bradley again waited near a group of pay telephones and when one of the telephones rang she answered it. The caller was a man who Bradley recognized to be one of the men who had broken into her house. The man stated that a woman would come to get the money from Bradley at the second 7–Eleven store and warned her that if the woman did not return in ten minutes he would kill her baby.

A few minutes later, Titus approached Bradley and obtained the money. Titus told Bradley that she could pick up her baby in front of the office of a nearby apartment complex in ten minutes. F.B.I. agents shortly thereafter arrested Titus and the two appellants. Both the baby and the money were returned safely to Bradley.

### Discussion

Appellants allege several issues on appeal, however the primary issue for this Court to decide is whether the deplorable conduct of the appellants outlined above constitutes a violation of 18 U.S.C. § 2113(a). In order to violate subsection 2113(a), seven criteria must be met: (1) an

---

1. In looking at a Dallas City map, this Court takes judicial knowledge that the distance between the Guaranty Bank and the first 7–Eleven store is approximately five miles and the distance between the two 7–Eleven stores is approximately four miles.

individual or individuals must, (2) use force and violence, or intimidation, (3) to take or attempt to take, (4) from the person or presence of another, (5) money, property, or anything of value, (6) belonging to or in the care, custody, control, management or possession, (7) of a bank, credit union, or savings and loan association.

This case turns upon the sixth and seventh elements listed above: namely, did the money "belong to" a bank or was it "in the care, custody, control, management or possession" of a bank. A review of the cases discussing this element indicates that such cases fall within three distinct categories. The first category involves cases in which items are taken from the premises of a bank. The second category involves cases in which the funds taken actually are owned by a bank, as opposed to being owned by an individual who is a customer of the bank. The third category involves cases in which the funds are taken from agents or employees of a bank.

I. First Category—Items Contained on Premises of a Bank

Courts consistently have found that safety deposit boxes are within the "care, custody, control, management, or possession" of a bank. For instance, in *United States v. Dix,* 491 F.2d 225 (9th Cir.1974), a secretary regularly accompanied her employer to a bank where he kept his bonds in safety deposit boxes. *Id.* at 226. The employer was partially blind and the secretary's duty was to clip coupons onto bonds as the employer instructed. *Id.* During one of the occasions that she visited the bank with her employer, the secretary stole $315,000.00 worth of bonds. *Id.* The Ninth Circuit upheld the conviction of the secretary under § 2113, specifically finding that the contents of the safety deposit box "were within the care of the bank, ..." *Id.*

The Government in the present case relies heavily upon another case which fits within this category, *United States v. Clark,* 398 F.Supp. 341 (E.D.Pa.1975). In *Clark,* Mr. and Mrs. Kelly and their granddaughter were taken hostage by three individuals. Two of the abductors kept Mrs.

Kelly and the granddaughter in a home while the third abductor went with Mr. Kelly to a bank to obtain the contents of Mr. Kelly's safety deposit box. *Id.* at 374. The District Court in the Third Circuit found that "the contents of the safety deposit box [were] within the 'care, custody, control, management, or possession' of a bank, as those terms are used in the bank robbery statute." *Id.* at 372.

Another case which fits under this category is *Chapman v. United States,* 346 F.2d 383 (9th Cir.), *cert. denied,* 382 U.S. 909, 86 S.Ct. 249, 15 L.Ed.2d 161 (1965). In this case, Chapman resigned from her position at a bank. Approximately five months thereafter, Chapman entered the bank after business hours with a key which she presumably kept from the time when she was employed at the bank. Chapman stole books and papers from the desk of her replacement. Some of the stolen items were property of the bank, and some items were property of her replacement. The Ninth Circuit found that all of the stolen items were " 'within the care, custody or control of the bank,' ...". *Id.* at 387.

In the three cases discussed above, *Dix, Clark* and *Chapman,* the sixth element required for a violation of Section 2113(a) clearly was present. In *Dix,* the secretary took the bonds out of the safety deposit box while in a conference room in the bank. The bonds were definitely in the "care" of the bank. In *Clark,* one of the abductors forced a bank customer to go to the bank with him and turn over to the abductor items in the customer's safety deposit box. Once again, these items were in the "care" of the bank. In *Chapman,* the former bank employee stole some personal items from her replacement's desk. Such items were in the "care" of the bank when they were taken.

In no way do the facts of the present case fit under this category. Bradley withdrew $4,000.00 of her own money from her private checking account. Following the instructions from Titus, Bradley left the bank and proceeded about five miles to a 7-Eleven store where she received a telephone call to drive four more miles to an-

other 7–Eleven store. The funds which Bradley withdrew from her account were delivered to Titus at the second 7–Eleven store.

While the first five elements for a violation of Section 2113(a) probably were met at the time that Bradley transferred the funds to Titus in front of the second store, the sixth and seventh elements were never met. The $4,000.00 did not "belong to" a bank and it was not "in the care, custody, control, management or possession of a bank" at the time that Bradley transferred the money to Titus. The money was Bradley's private funds and in her care, custody and control when it was turned over to Titus.

## II. Second Category—Funds Taken Actually Are Owned by Bank

Other cases have considered whether money given to kidnappers as ransom belongs to or is owned by a bank. For example, in *United States v. Carpenter*, 611 F.2d 113 (5th Cir.1980), this Court considered the fact situation where the son of a bank officer was abducted and held until the ransom was paid. The abductor was convicted of extortion under 18 U.S.C. § 1951 (1984) ("Hobbs Act") and appealed arguing that no federal crime was committed. This Court upheld the conviction, finding that "the extortion was directed at the bank and not solely at the parents.... A very large amount of money was demanded. The abductor knew without asking that both parents worked at the bank. And statements made over the telephone also indicated that the abductor was looking to the bank's assets for payment, not solely to the assets of the parents." *Id.* at 114.

Under similar facts, the Sixth Circuit upheld a conviction under the bank robbery statute, 18 U.S.C. § 2113. *United States v. Beck*, 511 F.2d 997, 999 (6th Cir.1975). An abductor kidnapped the wife and grandchild of a bank vice-president, and requested $50,000.00 for their release. The bank vice-president arranged for $50,000.00 of the bank's funds to be transferred to the abductor. The Sixth Circuit found that this

was sufficient to find a taking of funds belonging to a bank in violation of Section 2113. *Id.*

Neither *Carpenter* nor *Beck* provide a basis to uphold the conviction in the present cases. In both of these cases, the money given to the abductors in exchange for the individuals kidnapped belonged to a bank, and not an individual customer. In the present case, the funds which Bradley transferred to Titus belonged solely to Bradley and were in the care, custody and management of Bradley at the time of the transfer. The evidence in this case clearly shows that no funds belonging to the bank were transferred to appellants.

## III. Third Category—Funds in Possession of Agent or Employee of Bank

The Seventh Circuit has found that funds belong to a bank when they actually are possessed by a bailee. *United States v. Jakalski*, 237 F.2d 503, 506 (7th Cir.1956). In *Jakalski*, an armored truck company was employed by a bank to transport money and property for a bank. One of the armored trucks was robbed while transporting property of a bank. The Court found that the robber could be convicted under Section 2113 since the items stolen were property " 'belonging to, or in the care, custody, control, management, or possession' " of a bank. *Id.* at 506.

The United States Court of Appeals for the District of Columbia reached the same result where an individual robbed a bank messenger. *White v. United States*, 85 F.2d 268, 270 (D.C.Cir.1936). The Court found that the messenger "was an agent employed by the bank to collect and receive money *as the property of the bank* " and that the money was in the messenger's possession in his capacity as an agent for the bank at the time of the robbery. *Id.* Accordingly, the Court concluded that the robber's conviction under the bank robbery statute was appropriate. *Id.*

Both *Jakalski* and *White* stand for the proposition that bank assets belong to the bank and prosecution may be under Section 2113 even though such assets actually are in the possession of a bank employee or

agent. These cases do not support a conviction under the facts of this case. Bradley was not an employee or agent of a bank. In addition, the funds which Bradley transferred to Titus were her own and did not belong to a bank. Bradley was simply a bank customer who withdrew her own funds from a bank and delivered them to Titus approximately nine miles from the bank.

### IV. Legislative History

The legislative history also indicates that Section 2113 cannot be extended to the present facts. Stated in the most basic terms, Section 2113 is intended to prevent robberies of banks and similar institutions. Section 2113 is a consolidation of 12 U.S.C. § 588a–b (repealed 1948). The legislative history for Section 588 states, in pertinent part, "The bill provides punishment for those who rob, burglarize, or steal from such institutions [banks], or attempt so to do." H.R. 1461, 73d Cong., 2d Sess. (1934). The legislative history emphasizes that the bill was intended to punish those who commit criminal acts directed at a bank, not at a bank's customer. The congressional intent is more clearly manifested in the caption of 12 U.S.C. § 588a *et seq.*—"An Act to provide *punishment for certain offenses committed against banks* organized or operating under laws of the United States ..." 12 U.S.C. § 588a *et seq.* (repealed 1948) (emphasis added).

Although the Congress has made minor revisions to Section 2113 throughout the years, the legislative history indicates that the section continues to be directed at crimes committed solely against banks and similar institutions. Upholding appellants' convictions in this case under Section 2113 would expand the scope of this provision far beyond that intended by the Congress.

The actions which the appellants perpetrated against Bradley and her family are truely egregious. But outrageous acts alone do not confer jurisdiction upon this Court to prosecute the appellants. Federal

Courts are courts of limited jurisdiction and while the facts of this case cannot be prosecuted under the federal bank robbery statute; the facts clearly indicate that they may be prosecuted under state law for such offenses as burglary, kidnapping, assault and rape.

### V. Conclusion

In sum, the facts of this case do not support a conviction under the federal bank robbery statute, 18 U.S.C. § 2113. Accordingly, the convictions of Appellants Van and Oliver are hereby reversed.[2]

**2.** This Court need not address the other issues raised by appellants since their convictions are

hereby reversed.