**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 29, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

CHARLES CHAVEZ,

    Defendant - Appellee.

No. 20-2083

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:19-CR-01818-MV-1)**
_____

Emil J. Kiehne, Assistant United States Attorney (John C. Anderson, United States Attorney, with him on the briefs), Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellant.

Aric G. Elsenheimer, Assistant Federal Public Defender, Office of the Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellee.
_____

Before **BACHARACH**, **EBEL**, and **EID**, Circuit Judges.
_____

**EID**, Circuit Judge.
_____

Defendant-Appellee Charles Chavez is accused of attempting to force two individuals to withdraw their money from a bank automated teller machine ("ATM") at gunpoint, in violation of 18 U.S.C. § 2113(a) and (d), as well as 18 U.S.C.

§ 924(c)(1)(A)(ii).  The district court dismissed these charges, reasoning that, had the accountholders completed the withdrawal as intended, Chavez would have taken the money from them, as opposed to from the bank that operated the ATM.  The district court's decision aligns with the Fifth Circuit's approach to this issue but conflicts with the Seventh Circuit's.  We side with the Seventh Circuit.  Using force to induce a bank customer to withdraw money from an ATM is federal bank robbery, so Chavez cannot show that the government is incapable of proving that his specific conduct amounted to attempted federal bank robbery.  Exercising jurisdiction under 18 U.S.C. § 3731, we reverse and remand.

## I.

The following facts are undisputed at this stage, with one exception.  On January 8, 2019, Charles Chavez, armed with a rifle, ran up to the passenger side of an occupied vehicle parked at a Wells Fargo ATM in Albuquerque, New Mexico. The ATM was not located on the premises of a Wells Fargo bank branch.  Chavez demanded money from the vehicle's two occupants ("the accountholders").  The accountholders, however, did not have any cash.  Chavez demanded that they put a bank card into the ATM and make a withdrawal.  They claimed that they could not make a withdrawal because they had just deposited a check (which had not yet cleared) and did not have other funds in their account.  At that point, according to the government, a law enforcement officer arrived on the scene, causing Chavez to change course.  Chavez maintains that he changed course of his own accord, but this

minor dispute of fact is not relevant.  Either way, Chavez asked the accountholders

for cigarettes and left.  He was later arrested.

On June 27, 2019, a six-count indictment was returned against Chavez.  Two

of those counts—count 5 and count 6—are the subject of this appeal.  Count 5

charged Chavez with, "by force, violence, and intimidation, . . . attempt[ing] to take

from the person and presence of another a sum of U.S. currency belonging to and in

the care, custody, control, management and possession of Wells Fargo Bank, . . . and

in committing such offense, . . . assault[ing] and put[ting] in jeopardy the life of

another person by use of a dangerous weapon," in violation of 18 U.S.C. § 2113(a)

and (d).  App'x at 8–9.  Count 6 charged Chavez with "knowingly us[ing], carr[ying],

and brandish[ing] a firearm, during and in relation to . . . attempted bank robbery

with a dangerous weapon, as charged in Count 5 . . . , and in furtherance of such

crime, possess[ing] and brandish[ing] said firearm," in violation of 18 U.S.C.

§ 924(c)(1)(A)(ii).  *Id.* at 9.

After he was indicted, Chavez moved to dismiss counts 5 and 6.  He contended

that "the facts . . . fall outside of the relevant criminal statute" and are "insufficient to

establish a basis for attempted bank robbery."  *Id.* at 11–12.  He maintained that

"[b]ecause [he] did not commit the crime of attempted bank robbery, there is no

federal jurisdiction—no crime for which [he] may be prosecuted in a court of the

United States—for the charge under § 924(c) in count six."  *Id.* at 15.

The district court granted Chavez's motion.  Deeming Chavez's case to "fall[]

within the limited scenario in which the operative facts are undisputed and a purely

3

legal issue is presented," the district court assessed "whether, as a matter of law, the conduct alleged by the government constitutes a submissible case." *Id.* at 42. The key question, it determined, was "whether an individual violates 18 U.S.C. § 2113(a) when he forces someone to make a withdrawal from an ATM." *Id.* at 44. That turned on whether Chavez would have taken "money belonging to, or in the care, custody, control, management, or possession of [a] bank." *Id.* at 46. In the district court's view, he would not have. The court took the position that "the relevant time at which the money must be in the 'care, custody, control, management, or possession of, any bank' is the time of the transfer of the money from the victim to the defendant." *Id.* (quoting 18 U.S.C. § 2113(a)). "[A]lthough the bank undoubtedly had a property interest in the money while it was still in the ATM," the district court explained, "it no longer would have had such a property interest once the money was withdrawn." *Id.* at 48. Accordingly, the district court concluded that, "as a matter of law, Mr. Chavez's actions did not violate" the statute. *Id.* It added that "Count 6 of the Indictment is predicated on Count 5," so "Count 6 must also be dismissed." *Id.*

The government appeals. *See* 18 U.S.C. § 3731. Neither party disputes that if count 5 was properly dismissed, count 6 was properly dismissed as well. As a result, the issue presented is whether the government is incapable of showing that Chavez's conduct amounted to attempted bank robbery in violation of 18 U.S.C. § 2113(a) and (d), as charged in count 5.

4

## II.

A court may dismiss an indictment before trial, in whole or in part, for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). However, pretrial dismissals based on "facts outside the indictment and bearing on the general issue" of guilt are uncommon. *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010). We have held that "courts may entertain" this type of dismissal "in the 'limited circumstances' where '[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts,' and [3] the district court can determine from them that, '*as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt.'" *Id.* (alterations and emphasis in original) (quoting *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994)).

"[A] pretrial dismissal" of this sort "is essentially a determination that, *as a matter of law*, the government is incapable of proving its case beyond a reasonable doubt." *Hall*, 20 F.3d at 1088. Such a dismissal is appropriate "only when and 'because undisputed evidence shows that . . . the [d]efendant could not have committed the offense for which he was indicted.'" *Pope*, 613 F.3d at 1261 (quoting *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006)). "If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion," the prosecution must continue. *Id.* at 1259. Any other approach would "risk trespassing on territory reserved to the jury as the ultimate finder of fact in our criminal justice system." *Id.* We agree that the district court properly evaluated the substance of the motion to dismiss because all operative facts

5

outside the indictment were undisputed.  Our review of its decision on the merits of the motion is de novo.  *Hall*, 20 F.3d at 1088.

## III.

Chavez was charged with attempted bank robbery under 18 U.S.C. § 2113(a), which imposes criminal liability on "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another . . . money . . . belonging to, or in the care, custody, control, management, or possession of, any bank."  Section 2113(d) adds that "[w]hoever, in committing, or in attempting to commit, any offense defined in subsection[] (a) . . . , assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device," is subject to an enhanced maximum sentence.  The dispute here concerns solely § 2113(a).

Although the government appeals the dismissal of Chavez's attempted bank robbery charge, we agree with the parties and the district court that the legal question we must ultimately decide to resolve this appeal is whether the federal bank robbery statute covers successfully coercing an ATM withdrawal.  We answer that question in the affirmative.  First, however, we explain why the question on appeal concerns the completed offense, even though Chavez has not been charged with it.

### a.

This case concerns the scope of the completed offense of federal bank robbery because Chavez's arguments for dismissal necessarily raise the legal impossibility defense.  That defense turns on whether Chavez's conduct, as he understood and

6

intended it, would fall within the statute. "Under federal law, 'attempt generally requires both (1) an intent to commit the substantive offense, and (2) the commission of an act which constitutes a substantial step towards commission of the substantive offense.'" *United States v. Faulkner*, 950 F.3d 670, 676 (10th Cir. 2019) (brackets omitted) (quoting *United States v. Gordon*, 710 F.3d 1124, 1150 (10th Cir. 2013)). Chavez did not argue before the district court, nor does he argue now, that he lacked the intent to steal money from the ATM or that holding the accountholders at gunpoint was not a "substantial step" toward doing so. Instead, Chavez's narrow argument remains that, had he successfully coerced the accountholders into withdrawing money from the ATM, his conduct would nonetheless fall outside the federal bank robbery statute's scope because the money would have belonged to the accountholders, and not the bank, at the time he would have taken it. That argument clearly sounds in legal impossibility, although the parties have not used that term in their briefing. *See United States v. Aigbevbolle*, 827 F.2d 664, 666 n.2 (10th Cir. 1987) (referencing legal impossibility defense).

The legal impossibility defense to an attempt crime generally applies to "a situation 'when the actions which the defendant performs or sets in motion, even if fully carried out *as he desires*, would not constitute a crime.'" *United States v. Farner*, 251 F.3d 510, 513 (5th Cir. 2001) (quoting *United States v. Oviedo*, 525 F.2d 881, 883 (5th Cir. 1976)). Legal impossibility is distinct from factual impossibility, which is typically not a valid defense to attempt. Factual impossibility is where a defendant argues that the course of conduct that he attempted to carry out would not,

7

in fact, be criminal—usually for a reason unknown to the defendant. *Id.* at 512. For example, perhaps the defendant was unaware that a "bomb" he used was a fake, or that a "minor" he contacted was undercover and overage. Factual impossibility is not a defense to attempt because, under the circumstances as the defendant believed them to be, the defendant was still pursuing a criminal design. In contrast, legal impossibility comes up in fact patterns where the defendant's plans were arguably outside a statute entirely. *See United States v. Ballinger*, 395 F.3d 1218, 1238 n.8 (11th Cir. 2005) (en banc) ("[I]f the completed offense would not be a crime, neither is a prosecution for attempt permitted."). Although the line between factual and legal impossibility can sometimes be difficult to draw, *see Farner*, 251 F.3d at 512, we think Chavez's argument raises legal impossibility because he contends that, under the facts as he believed them to be, his course of conduct, if completed, would not have violated the statute.

We have endorsed the general view that factual impossibility is not a defense to attempt crimes. *See United States v. Hankins*, 127 F.3d 932, 934–35 (10th Cir. 1997). We have also acknowledged the legal impossibility defense. *See Aigbevbolle*, 827 F.2d at 666 n.2. However, we have not previously decided the extent to which federal law provides for a legal impossibility defense to attempt, either as a general matter or in the context of the federal bank robbery statute. *Cf. United States v. Tykarsky*, 446 F.3d 458, 466 (3d Cir. 2006) ("[I]t is well established in [the Third Circuit] that the availability of legal impossibility as a defense to a crime is a matter of legislative intent."). For purposes of this appeal, we will assume without deciding

8

that legal impossibility is a defense to attempt in this circuit, meaning that it would be a permissible basis for affirming the dismissal of Chavez's attempted bank robbery charge. This appeal thus turns on whether, had the accountholders withdrawn money, Chavez would have committed federal bank robbery under 18 U.S.C. § 2113(a). If so, Chavez's attempt charge would not be invalid as a matter of law. If not, it follows that the indictment, to the extent it charged Chavez with attempting to force the accountholders to withdraw money, would fail to state an offense and be subject to dismissal. *See* Fed. R. Crim. P. 12(b)(3)(B)(v).

**b.**

18 U.S.C. § 2113(a) provides, in relevant part, that "[w]hoever, by force and violence, or by intimidation, takes . . . from the person or presence of another . . . money . . . belonging to, or in the care, custody, control, management, or possession of, any bank" commits federal bank robbery. We are not the first circuit asked whether § 2113(a) encompasses a robbery in which a bank customer is forced to withdraw money from an ATM. The Fifth and Seventh Circuits have both addressed this question, and they have reached opposite conclusions.

In *United States v. McCarter*, 406 F.3d 460 (7th Cir. 2005) (Posner, J.), *overruled on other grounds by United States v. Parker*, 508 F.3d 434, 440–41 (7th Cir. 2007), the Seventh Circuit held that a man who accosted a woman in a parking garage and, at gunpoint, attempted to force her to drive to an ATM to withdraw funds was guilty of attempted federal bank robbery. *Id.* at 461–63. In reaching that conclusion, the Seventh Circuit determined that applying § 2113(a) to

9

the facts before it depended on two key questions: "first, on whether money in an ATM is 'in the care, custody, control, management, or possession of, any bank,'" and, "second, on whether forcing a customer to withdraw cash from an ATM is robbing the bank rather than robbing just the customer." *Id.* at 462–63 (quoting 18 U.S.C. § 2113(a)). The answer to the first question was "obviously" yes, in the court's view. *Id.* at 462. That was also its answer to the second question. *Id.* at 463. The Seventh Circuit explained that a fact pattern where "the depositor is robbed of the money he has just withdrawn after he leaves the bank" falls outside the statute, but reasoned that "if . . . [a] robber forces [a] bank's customer to withdraw . . . money, the customer becomes the unwilling agent of the robber, and the bank is robbed." *Id.* The court concluded that the defendant had attempted federal bank robbery. *Id.*

A few months after *McCarter*, the Fifth Circuit issued a conflicting ruling in a case involving the completed offense. In *United States v. Burton*, 425 F.3d 1008 (5th Cir. 2005), a man grabbed a woman as she left a post office, took her to a drive-through ATM, and forced her to withdraw money from her account. *Id.* at 1009. Observing that § 2113(a) applies when money "belong[s] to" or is in "the care, custody, control, management, or possession" of a bank, the Fifth Circuit considered whether either requirement was satisfied. *Id.* at 1010. Starting with whether the stolen funds belonged to the bank, the Fifth Circuit held that they did not. *Id.* The defendant, the Fifth Circuit noted, "knew [the bank customer's] account had sufficient funds." *Id.* Hence, "[t]his [was] not a case in which the defendant sought

the bank's money." *Id.* Rather, the bank customer "made a valid—albeit coerced—withdrawal of her own funds, which [the defendant] then stole." *Id.* The money the defendant took belonged to the bank customer, not the bank, in the court's view. *See id.* The Fifth Circuit also held that the funds were not in the bank's care, custody, control, management, or possession. It reasoned that § 2113(a) directed it to "only consider 'the care, custody, control, management, or possession' at the time of the transfer to [the defendant]." *Id.* That temporal requirement was not satisfied, the Fifth Circuit said, because "[r]egardless of how brief [the bank customer's] possession, the bank did not have 'care, custody, control, management, or possession'" of the money after the bank customer took it from the ATM. *Id.* at 1011. The court concluded that the defendant had not committed federal bank robbery.

The Fifth Circuit's holding in *Burton* followed largely from its earlier decision in *United States v. Van*, 814 F.2d 1004 (5th Cir. 1987). In *Van*, two men abducted a woman's two-year-old daughter and held her for ransom, directing the woman to withdraw money from her bank account and deliver it to them at a convenience store several miles away from the bank. *Id.* at 1005 & n.1. The next day, accompanied by a friend and a hidden FBI agent, the woman made the withdrawal and followed the kidnappers' instructions to recover her daughter. The men were charged with federal bank robbery. *Id.* at 1004. The Fifth Circuit determined that the men had not taken money belonging to or in the care, custody, control, management, or possession of a bank. *Id.* at 1006–07. It reasoned that "when [the money] was turned over to" the

11

men, it "was [the woman's] private funds and in her care, custody and control." *Id.* at 1007.

The Fifth Circuit relied on *Van* in *Burton* when it stated that the relevant time for evaluating whether money taken by a defendant belonged to a bank was the moment of transfer to the defendant. *Burton*, 425 F.3d at 1010. Observing that *Van* was "directly on point and controlling," it emphasized that the victim "inserted her ATM card, entered her PIN, and withdrew money from her account," which had sufficient funds, before the defendant stole it from her. *Id.* For its part, the Seventh Circuit cited *Van* in *McCarter* to support the proposition that "[i]f the depositor is robbed of the money he has just withdrawn after he leaves the bank, that is not a bank robbery," which the court distinguished from the proposition that "if . . . the robber forces the bank's customer to withdraw the money, the customer becomes the unwilling agent of the robber, and the bank is robbed." *McCarter*, 406 F.3d at 463.

**c.**

The issue is whether the money in the ATM would have "belong[ed] to" or been "in the care, custody, control, management, or possession of" Wells Fargo at the time that Chavez would have taken it "from the person or presence of another." *See* 18 U.S.C. § 2113(a).[1] We side with the Seventh Circuit and hold that directly forcing a bank customer to withdraw money from an ATM qualifies as federal bank robbery

---

[1] We assume without deciding that the person-or-presence requirement would be met with respect to a forced withdrawal by the bank customers because the issue is not presented on appeal and was not addressed by the district court.

12

in violation of 18 U.S.C. § 2113(a) because the funds belonged to the bank at the time of the coerced withdrawal. That result leaves no room for dismissing the challenged counts under Chavez's legal impossibility argument, so the decision below must be reversed.

First, we agree with the Seventh Circuit that money in an ATM is "obviously" bank money under 18 U.S.C. § 2113(a). *See McCarter*, 406 F.3d at 462 (concluding that money in an ATM is in the care, custody, control, management, or possession of a bank); *see also Shaw v. United States*, 137 S. Ct. 462, 466 (2016) ("When a customer deposits funds, the bank ordinarily becomes the owner of the funds."). If Chavez were to take money from an ATM directly, he would be taking a bank's money within the statute's contemplation.

We also agree with the Seventh Circuit—as well as the Fourth Circuit and the Massachusetts Supreme Judicial Court, which have followed the Seventh Circuit's lead—that when "[a] robber forces [a] bank's customer to withdraw . . . money, the customer becomes the unwilling agent of the robber, and the bank is robbed." *McCarter*, 406 F.3d at 463; *see also United States v. Johnson*, 915 F.3d 223, 232 (4th Cir. 2019) ("Federal law . . . covers robbery by conscription."); *Commonwealth v. McGhee*, 25 N.E.3d 251, 255 (Mass. 2015). It is no different than "if the defendant had planned to have a confederate remove the money from the ATM." *McGhee*, 25 N.E.3d at 255. That means that if Chavez had succeeded in compelling the accountholders to withdraw money from the ATM, he would have stolen money from the bank through the accountholders, who were his "unwilling agent[s]." *See*

13

*McCarter*, 406 F.3d at 463.  We reject the Fifth Circuit's position that the ownership of the money is not measured until the defendant physically places his hands on it, without regard to how the defendant acquired it.  Not only would this produce absurd results, but the statute's text plainly calls for evaluating the money's status at the time of its "tak[ing]."  18 U.S.C. § 2113(a).  In this case, the money would have been taken when the accountholders completed the coerced withdrawal.[2]  We conclude that, had Chavez completed the course of conduct he attempted, he would have committed federal bank robbery under 18 U.S.C. § 2113.  That result forecloses Chavez's legal impossibility argument, which means the attempt count, and the count predicated upon the attempt count, should not have been dismissed before trial.

We disagree with the Fifth Circuit's contrary approach.  That court held that a forced withdrawal from an ATM can be "valid" even though "coerced."  *Burton*, 425 F.3d at 1010.  That aspect of its holding largely followed from *Van*.  In the first place, we are not obligated to follow the Fifth Circuit's line of cases and, for the reasons above, we think *McCarter* was correct.  A directly coerced withdrawal is not somehow "valid" enough to move these facts outside 18 U.S.C. § 2113(a).  Moreover, *Van* can be distinguished, just as it was distinguished in *McCarter*, because Chavez's control over the accountholders in this case would have been much

---

[2] We need not consider whether Chavez intended to take the money from the ATM tray himself, intended to demand that the accountholders hand it to him, or had other plans.  For purposes of refuting Chavez's legal impossibility argument, the money would have been Wells Fargo's when the accountholders withdrew it as Chavez demanded.

more immediate than the control exercised in *Van*. *See McCarter*, 406 F.3d at 463 (citing *Van* for proposition that where a "depositor is robbed of . . . money he has just withdrawn after he leaves the bank, that is not a bank robbery"). The men in *Van* told the woman to withdraw money from her bank account to get her daughter back. *See Van*, 814 F.2d at 1005. But the men were not with the woman when she withdrew the funds. Although it was unlikely that she could have obtained $4,000 without accessing her bank account, the men did not ultimately know where the money she handed over had come from. After all, she started working with the authorities immediately, and had an FBI agent in her car when she withdrew the funds and made the handoff. Here, by contrast, Chavez would have been present when the withdrawal occurred. With a gun pointed at the accountholders, he was positioned to direct every aspect of the withdrawal. Whereas the men in *Van* used the woman's kidnapped daughter as a means to obtain her money, which happened to be housed in a bank, Chavez used the accountholders as a tool to take from the bank by exploiting their access to funds in the ATM. *Cf. Burton*, 425 F.3d at 1010 ("This is not a case in which the defendant sought the bank's money."). The control exercised by the men in *Van* may not have sufficed to render the woman their agent during the bank withdrawal for purposes of § 2113(a), but we have no doubt that Chavez's control over the accountholders here would have cleared that threshold, rendering them, in *McCarter*'s terms, "unwilling agent[s]" of Chavez.

In sum, we adopt the Seventh Circuit's approach to 18 U.S.C. § 2113(a), distinguishing and rejecting that of the Fifth Circuit. Because Chavez would have

committed the offense of federal bank robbery if the accountholders completed the

ATM withdrawal, his legal impossibility argument fails.  Accordingly, we conclude

that the government has stated an offense and the district court erred by dismissing

counts 5 and 6.

**IV.**

We REVERSE the district court's dismissal of counts 5 and 6 of the

indictment and REMAND for further proceedings consistent with this opinion.

United States v. Chavez, No. 20-2083
**EBEL**, J., concurring

I concur in the majority opinion.  However, I write separately simply to point out that there is still an open question as to whether the facts can satisfy that the taking occurred "from the person or presence of another" under 18 U.S.C. § 2113(a).  The government must prove several elements to convict on a charge of bank robbery under 18 U.S.C. § 2113(a).  As addressed in our opinion, the statute requires that the funds at issue be taken while "in the care, custody, control, management, or possession of, [the] bank."  But § 2113(a) also has an additional clause that requires the government to prove that the funds were taken or attempted to be taken "<u>from</u> the person or presence of another."  (Emphasis added.)  As the panel opinion correctly notes, this question was not before us in this appeal.  However, the government must still satisfy this clause on remand as we have not decided whether this clause can be satisfied under the alleged facts.

1